IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION

**SONYA WRIGHT**                                                                                      **PLAINTIFF**

**V.**                                                **CIVIL ACTION NO. 5:13-CV-68-KS-MTP**

**YAZOO CITY POLICE DEPARTMENT, et al.**                          **DEFENDANTS**

### MEMORANDUM OPINION AND ORDER

For the reasons stated below, the Court **grants** Defendants' Motion for Summary Judgment [45].

### I. BACKGROUND

This is an employment discrimination case. Plaintiff was an officer in the Yazoo City Police Department. Over the course of three and a half years, she was disciplined at least six times. She was finally terminated after an altercation in the police station with the mother of her son's child. She claims that Defendants terminated her because of her sex. She asserted a Title VII discrimination claim, plus state-law claims of intentional infliction of emotional distress and breach of contract. Defendants – Yazoo City, its Assistant Chief of Police, and members of its Board of Aldermen – filed a Motion for Summary Judgment [45], which is ripe for review.

### II. STANDARD OF REVIEW

Rule 56 provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a); *see also Sierra Club, Inc.*

*v. Sandy Creek Energy Assocs., L.P.*, 627 F.3d 134, 138 (5th Cir. 2010). "Where the burden of production at trial ultimately rests on the nonmovant, the movant must merely demonstrate an absence of evidentiary support in the record for the nonmovant's case." *Cuadra v. Houston Indep. Sch. Dist.*, 626 F.3d 808, 812 (5th Cir. 2010) (punctuation omitted). The nonmovant "must come forward with specific facts showing that there is a genuine issue for trial." *Id.* (punctuation omitted). "An issue is material if its resolution could affect the outcome of the action." *Sierra Club, Inc.*, 627 F.3d at 138. "An issue is 'genuine' if the evidence is sufficient for a reasonable jury to return a verdict for the nonmoving party." *Cuadra*, 626 F.3d at 812.

The Court is not permitted to make credibility determinations or weigh the evidence. *Deville v. Marcantel*, 567 F.3d 156, 164 (5th Cir. 2009). When deciding whether a genuine fact issue exists, "the court must view the facts and the inference to be drawn therefrom in the light most favorable to the nonmoving party." *Sierra Club, Inc.*, 627 F.3d at 138. However, "[c]onclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." *Oliver v. Scott*, 276 F.3d 736, 744 (5th Cir. 2002).

### III. DISCUSSION

#### A.   *Title VII Discrimination*

Plaintiff claims that Defendants terminated her because of her sex, but she has no direct evidence of discriminatory intent. The Court analyzes discrimination claims based on circumstantial evidence under the burden-shifting framework established by

*McDonnell-Douglas Corp. v. Green*, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973). *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 892 (5th Cir. 2012).

In the first step of the analysis, the plaintiff must "establish a prima facie case that the defendant made an employment decision that was motivated by a protected factor." *Id.* The burden "is not onerous," and it is "necessarily a flexible standard that must be adapted to the factual circumstances of the case." *Id.* (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981)). In "work-rule violation cases" like this one, a plaintiff can carry her *prima facie* burden in two ways. *Id.* at 892-93. First. she can demonstrate that she did not "violate the rule" or commit the infraction for which she was terminated. *Id.* Alternatively, she can show that employees who were not members of her protected class but committed "similar acts were not punished similarly." *Id.* at 893.

In the second stage of the analysis, the "burden of production shifts to the employer to provide a legitimate, non-discriminatory reason for the action." *Haire v. Bd. of Supervisors of La. State Univ.*, 719 F.3d 356, 362-63 (5th Cir. 2013). "The employer's burden is one of production, not persuasion, and does not involve a credibility assessment." *Black v. Pan Am Labs., LLC*, 646 F.3d 254, 259 (5th Cir. 2011).

Finally, in the third stage of the analysis, the burden shifts back to the plaintiff, who "must put forward evidence rebutting each of the nondiscriminatory reasons" articulated by the defendant. *Haire*, 719 F.3d at 363. She "may establish pretext by showing that a discriminatory motive more likely motivated her employer's decision, such as through evidence of disparate treatment, or that her employer's explanation

is unworthy of credence." *Id.*

Both the first (*prima facie*) and third (pretext) stages of the analysis arguably require the same showing from Plaintiff: that Defendant's reason for firing her was false, or that she was treated differently than similarly situated men. *Compare Turner*, 675 F.3d at 892-93 (plaintiff can make *prima facie* showing by either demonstrating either that she did not commit the rule violation for which she was terminated, or by showing that similarly situated employees of different class were not terminated), *with Haire*, 719 F.3d at 363 (plaintiff can meet pretext burden with evidence of disparate treatment or that her employer's proffered explanation is false). It does not matter whether the Court assesses Plaintiff's case at the *prima facie* or pretext stage. Her evidence is insufficient to meet either burden.

> 1. *Similarly Situated Male Employees*

To establish that she was treated differently than similarly situated male officers:

> [P]laintiff must show that . . . employees who were not members of the plaintiff's protected class were treated differently under circumstances nearly identical to [hers]. The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisors or had their employment status determined by the same person, and have essentially comparable violation histories. Moreover, the plaintiff's conduct that drew the adverse employment decisions must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions, because if the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis.

*Turner*, 675 F.3d at 892-93 (citations and punctuation omitted).

But "'nearly identical' is not synonymous with 'identical.'" *Id.* at 893 (quoting *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)). "[A] requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical." *Id.* "[E]ach employee's track record . . . need not comprise the identical number of identical infractions," but they "must be comparable." *Id.* (quoting *Lee*, 574 F.3d at 260-61). The Court must view the infractions from the perspective "of the employer at the time of the adverse employment decision." *Id.*

Plaintiff argues that she was treated differently than several similarly situated male officers, but none of the circumstances surrounding the incidents involving male officers cited by Plaintiff were "nearly identical" to hers. None of the male officers committed acts of insubordination, and none of them had the lengthy violation histories that Plaintiff had at the time of her termination.

Over the course of approximately three and a half years, Plaintiff committed at least six different infractions. The Board of Alderman hired her in January 2009 on the recommendation of Defendant Fry, but in May 2009 she was dismissed from the Mississippi Law Enforcement Officer's Training Academy for cursing at a training officer. In January 2010, Plaintiff received a written reprimand [45-4] for striking a handcuffed suspect and knocking him out of a chair. In June 2011, Plaintiff received a second written reprimand [45-5] for failing to follow the chain of command when requesting time off.

In August 2011, Plaintiff was suspended without pay for nine days and placed

5

on probation for a year [45-6, 45-7] for leaving her post in the middle of a shift. The air conditioner in her patrol car did not work. Plaintiff asked for a different car, but her supervisors denied the request and ordered her to continue on patrol. Rather than complete her shift, Plaintiff walked off the job and went home. The Chief recommended Plaintiff's termination, but the Board of Aldermen decided to impose the lesser punishment of suspension and probation.

In June 2012 – before her probation had ended – Plaintiff received a written warning [45-8] for failing to call for backup before responding to a domestic dispute call from her own home, in which her husband had pulled a gun on her son. Despite the infraction occurring during Plaintiff's probationary period, she only received a warning.

Finally, in November 2012, two officers reported [45-9, 45-10] that an altercation occurred at the station between Plaintiff and a young lady, Jonjala Alexander, who has a baby with Plaintiff's son. Alexander came to the station to file charges against Plaintiff's son. Officer Whisenton stated that Plaintiff "started raising her voice and cussing the young lady." Plaintiff allegedly told Alexander to "keep her dam [sic] name out of her mouth," that "this job don't mean a dam [sic] thing to her," and that she would "beat her ass." Whisenton got between the two women and asked Plaintiff to leave. Plaintiff complied.

Later that day, Plaintiff returned to the police station with her son, intending to file charges against Alexander. They asked to speak to Lieutenant Langston, who was on the phone and asked them to wait. Plaintiff allegedly responded, "[D]on't be rolling your eyes at my son." Langston refused to speak to Plaintiff, citing her

"attitude," and instructed her to leave the station and come back later. Langston later advised their captain of the incident.

Plaintiff eventually met with Assistant Chief Fry about the incident [45-11]. He had her read other officers' reports of what happened, the write-up he intended to take to the Board of Aldermen, and some of her past write-ups. Plaintiff refused to sign the write-up or to return the papers. Fry informed her that she was suspended with pay until further notice and asked for her gun and badge. Plaintiff allegedly became belligerent, and when she handed over her weapon she "didn't do it properly. Instead of turning it around, it was almost pointed at him and it just led from one thing to another" [52-1].

In summary, in less than four years Plaintiff committed at least six different infractions, including several different instances of insubordination. None of the male officers cited by Plaintiff has as lengthy a "rap sheet" as she does. In fact, she provided evidence of no more than a couple of examples of misconduct per male officer, and none of them involved insubordination.[1] In summary, Plaintiff's comparators simply do not have "comparable violation histories." *Id.* Accordingly, the Court finds that Plaintiff failed to provide evidence of any similarly situated male officers who received better treatment than she did.[2]

---

[1]Furthermore, one of the male officers – Defendant Fry – is not an appropriate comparator because he held a higher rank than Plaintiff at the time of his infraction. *Id.* (employees being compared must hold same job or responsibilities).

[2]*See Lee*, 574 F.3d at 261-62 (train engineer with a history of moving violations was not similarly situated with engineer fired for dishonesty and misuse

### 2.   *The Veracity of Defendants' Explanation*

Next, Plaintiff argues that Defendants' explanation for her termination is false or unworthy of credence. She must "produce evidence, viewed in the light most favorable to her, that would permit a jury to believe that [the defendant's] proffered reason for firing her was not its true reason but simply pretext for a . . . discriminatory reason." *Vaughn v. Woodforest Bank*, 665 F.3d 632, 637 (5th Cir. 2011). "In cases in which an employer discharges an employee based on the complaint of another employee, the issue is not the truth or falsity of the allegation, but whether the employer reasonably believed the employee's allegation and acted on it in good faith." *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 379 (5th Cir. 2010). "[E]ven an incorrect belief that an employee's performance is inadequate constitutes a legitimate, non-discriminatory reason" for termination. *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir. 1991). A plaintiff's "assertion of innocence alone does not create a factual issue as to the falsity" of the defendant's explanation for terminating her. *Jackson*, 602 F.3d at 379.

Defendants based their decision to finally terminate Plaintiff on the reports [45-9, 45-10] filed by Officers Whisenton and Langston, both of whom are women. Plaintiff presented testimony from herself and Jonjala Alexander disputing the reports from

---

of company property, but was similarly situated with another engineer with history of moving violations); *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 514-15 (5th Cir. 2001) (plaintiff's comparators were not similarly situated because they committed different violations than she did); *Smith v. Wal-Mart Stores (No. 471)*, 891 F.2d 1177, 1180 (5th Cir. 1990) (employee fired for violating different company policy was not similarly situated to plaintiff).

Officers Whisenton [45-9] and Langston [45-10], but she admitted [45-1] that the reports were Defendants' only source of information about what happened, beyond her own account. The record contains no evidence indicating that Defendants acted unreasonably or in bad faith by crediting Whisenton and Langston's word over Plaintiff's – particularly in light of Plaintiff's indisputably checkered work history. Accordingly, Plaintiff failed to demonstrate that Defendants' explanation for her termination is false or unworthy of credence.

For these reasons, the Court finds that Plaintiff failed to provide sufficient evidence to carry her burden – regardless of whether it is evaluated at the *prima facie* or pretext stage of the analysis.

## B.  IIED

Plaintiff failed to address her claim for intentional infliction of emotional distress in briefing, but she conceded at deposition [45-1] that she was not seeking damages for emotional distress. Likewise, she responded to each of Defendants' interrogatories [45-15] concerning emotional distress with "No," presumably indicating that she is not seeking emotional damages. Accordingly, the Court grants Defendants' motion for summary judgment as to Plaintiff's claim for intentional infliction of emotional distress.

## C.  *Breach of Contract*

Finally, Plaintiff argues that the Department's "General Orders" [45-16], which she described as the "handbook" [45-1], provide her with the contractual right to a progressive disciplinary process. She argues that she "could have been suspended,

placed on probation, and/or reprimanded," rather than terminated. In her Complaint [1], she suggests that she "should have been subjected to disciplinary actions prior to termination for the alleged misconduct such as reprimands, written warnings and counseling," and at deposition, she stated she had the right to a verbal warning and a written warning before termination.

The "General Orders" provide general rules of conduct for officers, but they do not address the disciplinary process and procedures. Plaintiff has not provided evidence of any other agreement – verbal or written – that would create the contractual rights which she claims were violated. Furthermore, the record shows that Plaintiff was, in fact, granted a progressive disciplinary process insofar as she received written warnings, suspension, and probation during the years preceding the altercation with Alexander. The Court grants Defendants' motion for summary judgment as to Plaintiff's claim for breach of contract.

## IV. CONCLUSION

For all of these reasons, the Court **grants** Defendants' Motion for Summary Judgment [45]. The Court will enter a separate judgment in accordance with Rule 58.

SO ORDERED AND ADJUDGED this 30th day of April, 2014.

*s/ Keith Starrett*
UNITED STATES DISTRICT JUDGE